# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

     Plaintiff,

v.

DEILY VERAS,

     Defendant.

Case No. 17-CR-158-JPS

**ORDER**

**1. BACKGROUND**

Defendant Deily Veras filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) to which the Government responded. (Docket #45 and #50). Defendant has not filed an optional reply brief. Noting that Defendant's time to reply has long since expired, the Court will treat Defendant's motion as being fully briefed. Having reviewed both parties' submissions, the Court will deny Defendant's motion for compassionate release.

**2. FACTS**

Defendant fraudulently obtained over $2.7 million dollars in tax refund checks using the identities and Social Security Numbers of others.[1] After pleading guilty to both 18 U.S.C. §§ 641 and 2, theft of public money, and 18 U.S.C. § 1028A, aggravated identity theft, this Court sentenced Defendant to a total term of imprisonment of fifty-two months. (Docket #36

---

[1] Press Release, Department of Justice U.S. Attorney's Office Eastern District of Wisconsin, Man Sentenced to Fifty-Two Months in Prison for Multi-Million Dollar Tax Refund Scheme (Dec. 21, 2018), https://www.justice.gov/usao-edwi/pr/man-sentenced-fifty-two-months-prison-multi-million-dollar-tax-refund-scheme.

at 1–2). The Court also sentenced Defendant to a one-year term of supervised release following his imprisonment and ordered that Defendant pay restitution. (*Id.* at 3, 5). At present, Defendant has served approximately twenty-three months of his sentence. According to the Bureau of Prisons ("BOP"), his estimated release dated is October 21, 2022.[2]

Defendant is currently incarcerated at FCI Fort Dix in New Jersey, which recently experienced a significant spike in positive COVID-19 cases.[3] Presently, there are 103 inmate and 33 staff confirmed active cases.[4] According to Bureau of Prisons data, 506 inmates at FCI Fort Dix have, at some point, tested positive for the virus. *Id.*

In support of his motion for compassionate release, Defendant states that his age (36), gender (male), and ethnicity (Hispanic), make him more likely to be infected with and die from COVID-19. (Docket #45 at 2). He also claims to have hypertension, severe allergies, asthma, and extensive pulmonary and breathing issues. (*Id.* at 4, 11–12). However, the crux of Defendant's argument for compassionate release is his alleged hypertension.[5]

---

[2]Fed. Bureau of Prisons, Find an inmate., https://www.bop.gov/inmateloc/ (last visited Dec. 7, 2020).

[3]George Woolston, *U.S. Attorneys for Fort Dix Ordered to Detail COVID-19 Response; Cases at Prison Top 200,* Burlington Cty. Times, (Nov. 5, 2020), https://www.burlingtoncountytimes.com/story/news/2020/11/05/fort-dix-attorneys-ordered-detail-covid-19-response-cases-top-200/6176666002/.

[4]Fed. Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited Dec. 6, 2020).

[5]Defendant devotes a large portion of his motion discussing a BOP policy regarding the quarantining of inmates who are selected for home confinement. *See* (Docket #45 at 5–7). However, Defendant's discussion of this policy is irrelevant, as Defendant acknowledges that he was not designated to be released for home

It is unclear whether Defendant actually suffers from the aforementioned conditions. The Government points out that at the time of his sentencing, Defendant denied having any ongoing medical problems. (*See* Docket #50 at 1; Docket #31 at 12). The Court understands that Defendant's previous good health does not foreclose him from developing future health issues. Yet, there are no records of Defendant having or being treated for the conditions he cites in his motion. The Government points out that Defendant's most recent blood pressure reading in the record was "within a normal range." (Docket #50 at 2). Notably, Defendant has not replied to the Government's assertions that Defendant does not, in fact, suffer from hypertension or any of the other medical issues he mentioned. It is against this factual backdrop that the Court now turns to Defendant's motion.

3.  **LEGAL STANDARD**

Under 18 U.S.C. § 3582(c)(1)(A)(i), the Court can modify a term of imprisonment "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal . . . whichever is earlier" if "extraordinary and compelling reasons warrant such a reduction[.]" The reduction must also be "consistent with applicable policy statements issued by the [United States] Sentencing Commission." *Id*. § 3582(c)(1)(A). The commentary to the Sentencing Guidelines explains that "extraordinary and compelling reasons exist" when "[t]he defendant is suffering from a terminal illness, (i.e., a serious and advanced illness with an end of life trajectory)" such as cancer

---

confinement. Further, because the Court will deny Defendant's motion for compassionate release, it will disregard his request to be quarantined at home.

or advanced dementia. U.S.S.G. § 1B1.13 n.1.(A)(i). The commentary also considers a defendant's medical condition to be an extraordinary and compelling reason if:

> [t]he defendant is suffering from a serious physical or mental condition, suffering from a serious functional or cognitive impairment, or experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* §1B1.13 n.1.(A)(ii).

The Sentencing Guidelines' policy statement also requires that the Court determine whether "the defendant is not a danger" to others or the community, as provided in 18 U.S.C. § 3142(g). *Id.* § 1B1.13(B)(2). Prior to modifying a term of imprisonment, the Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a), if applicable. *Id.* § 1B1.13. Pursuant to § 3553(a), when determining the sentence to be imposed, the Court shall consider, among other things: the nature and circumstances of the offense; the defendant's history and characteristics; and the need for the sentence to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (2) afford adequate deterrence, (3) protect the public, and (4) provide the defendant with effective training, care, and/or treatment.

4.   **ANALYSIS**

First, the Court notes, and the Government concedes, that Defendant has exhausted his administrative remedies with the Bureau of Prisons. *(See* Docket #50-2 at 1–2). Next, the Court determines whether Defendant has an extraordinary and compelling reason in support of his release.

This Court has previously held that the outbreak of COVID-19, together with a defendant's underlying medical conditions that place the defendant at "high risk" should he contract the disease, establish an extraordinary reason warranting release. *See, e.g.*, *United States v. Gonzales*, Case No. 13-CR-101-JPS, 2020 WL 4437154, at *4 (E.D. Wis. Aug. 3, 2020). The Centers for Disease Control and Prevention guidance states that "adults of any age" with hypertension or high blood pressure "might be at an increased risk for severe illness from the virus that causes COVID-19[.]"[6] This guidance does not definitively state that those with hypertension are at high risk.

Further, there is no evidence that Defendant actually suffers from any of the underlying medical conditions he mentions in his motion. In a letter from Federal Defender Services ("FDS") to the Bureau of Prisons on Defendant's behalf, FDS states that Defendant is medically obese and conditions such as high blood pressure "come with" obesity. (Docket #50-2 at 6). Such remarks suggest that Defendant does not have hypertension now but could develop it. Again, his most recent blood pressure reading was within normal range. Lastly, his medical records are void of any reference to hypertension, asthma, breathing issues, or allergies. And, Defendant did not file anything additional with the Court in an attempt to substantiate his claims. Thus, this Court finds that Defendant has not established that he has

---

[6]Ctrs. for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Dec. 7, 2020).

an extraordinary or compelling reason warranting his release. *See United States v. Medley*, 3:18-cr-00379-MOD-DCK-1, 2020 WL 6878353, at *3–*4 (W.D.N.C. Nov. 23, 2020) (denying compassionate release to a defendant who had elevated blood pressure, but who had not been diagnosed with hypertension, because his "medical ailments do not present any impediment to his ability to provide self-care in the institution.").

Finally, the Court will consider the factors laid out in 18 U.S.C. § 3553(a) and whether Defendant's release presents a danger to others or the community in light of 18 U.S.C. § 3142(g). Although Defendant is on the cusp of serving the mandatory twenty-four-month sentence for violating 18 U.S.C. § 1028A, he has not yet served even half of his total term of imprisonment for both offenses. The Court finds that releasing Defendant after having served less than half of his sentence neither reflects the seriousness of his offenses nor affords adequate deterrence. Defendant argues, and the Government admits, that Defendant's conduct was non-violent in nature. However, this fact does not make Defendant's crime any less serious, as he stole the identities of several individuals and defrauded the Government out of almost $3,000,000.00. Although not violent, Defendant's conduct is still dangerous to others. *See United States v. Carter*, Case No. 18-cr-20483, 2020 WL 6707617, at *4–*5 (E.D. Mich. Nov. 16, 2020) (finding that granting compassionate release to a defendant involved in bank fraud and identity theft conspiracy "would inappropriately minimize the serious nature of his decision to steal the identities of innocent victims and defraud financial institutions for monetary gain."); *United States v. Kogan*, 16 Cr. 221-1 (KPF), 2020 WL 5441585, at *6 (S.D.N.Y. Sept. 9, 2020) (noting that "even if" the Court had found extraordinary and compelling reasons warranting release, it would deny the defendant's motion based on

consideration of the § 3553(a) factors as they related to the defendant's involvement in a Medicare and Medicaid fraud scheme).

The Court understands and sympathizes with Defendant's concerns about COVID-19. Nevertheless, Defendant has not established an extraordinary and compelling reason warranting his compassionate release. Even if he had, the Court's analysis of the § 3553(a) factors and § 3142(g) would dissuade the Court from granting Defendant's motion at this juncture.

## 5. CONCLUSION

Based on the foregoing, the Court will deny Defendant's motion for compassionate release. (Docket #45). The Court also will grant the Government's motion to seal. (Docket #49).

Accordingly,

**IT IS ORDERED** that Defendant's motion for compassionate release (Docket #45) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that the Government's motion to seal (Docket #49) be and the same is hereby **GRANTED**.

Dated at Milwaukee, Wisconsin, this 14th day of December, 2020.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge